**John E. MORGAN, Plaintiff,**

v.

**MASSACHUSETTS GENERAL HOSPITAL, Defendant.**

Civ. A. No. 85–3901–WF.

United States District Court, D. Massachusetts.

April 24, 1989.

244

Robert C. Johnson, Jr., Boston, Mass., for plaintiff.

James H. Wexler, Kotin, Crabtree & Strong, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

WOLF, District Judge.

Plaintiff John Morgan, a black male, has brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended, and 42 U.S.C. § 1981 alleging, among other things, that his former employer, defendant Massachusetts General Hospital (the "Hospital"), refused to promote him and ultimately discharged him because of his race. Morgan also alleges he was discharged in retaliation for his union organizing activities and his opposition to defendant's discriminatory policies, and also as a result of defendant's failure to take immediate action regarding alleged sexual advances made toward plaintiff by a co-worker. Finally, Morgan alleges he was subjected to a sexually hostile and/or intimidating work environment.

Plaintiff originally sued two of his superiors individually, as well as the Hospital. The claims against the individual defendants were dismissed on April 8, 1986. Morgan originally also brought a claim under 42 U.S.C. § 1985 alleging a conspiracy to violate his civil rights and several state law tort claims. The § 1985 and state law claims also were dismissed on April 8, 1986.

Thus, the only remaining claims are plaintiff's Title VII and § 1981 claims against the Hospital.

Defendant has moved for summary judgment, primarily contending that it had a legitimate business reason for discharging plaintiff. The Hospital contends plaintiff was discharged because of his apparently unprovoked assault on a fellow employee. The Hospital asserts that plaintiff has offered insufficient evidence suggesting this reason is a pretext for racial or any other prohibited form of discrimination to survive its motion for summary judgment. Defendant also argues that plaintiff's claims regarding promotions are totally unsubstantiated, and that he is unable to establish a prima facie case of sexual harassment. A hearing on defendant's motion was held on August 22, 1988. For the reasons stated below, defendant's motion for summary judgment must be allowed. In addition, the court concludes that the Hospital is entitled to dismissal of this action as a sanction for plaintiff's counsel's repeated violations of court orders.

## I. THE MOTION FOR SUMMARY JUDGMENT

### A. *Facts*

The following facts are not in dispute. Morgan's employment with the Hospital began in 1972. Amended Complaint ¶ 3. In about 1977, Morgan became a general service aide in the Environmental Services Department ("ESD"), Deposition of John Morgan ("Morgan Dep.") at 9, a position he held until his termination in December, 1984. His duties as a general service aide included mopping and waxing floors and, for a period, working in chemical laboratories. *Id.* at 10, 11, 102.

During his employment, Morgan's poor attendance was a matter of concern to the Hospital. *See* December 22, 1980 Job Counseling Report, exhibit J to Defendant's Memorandum in Support of its Motion for Summary Judgment ("Def.'s exh. J"). However, there is no allegation or evidence that plaintiff's poor attendance was a factor in his discharge. *See* Affidavit of Winthrop Huyghue, III ("Huyghue Aff."), Def.'s exh. A, at 3–4.[1]

In 1974, Mr. Morgan and some other employees, both black and white, became interested in forming a union at the Hospital. Morgan Dep. at 65. They talked with other employees to determine if there were complaints and a perceived need for a union. *Id.* The United Auto Workers made some effort to organize a union and published five or six editions of a newspaper for the Hospital's employees entitled *Generally Speaking.* Morgan Dep. at 70. In March, 1982, plaintiff wrote an article titled "The Benefit That Isn't." *See* Def.'s exhs. L and M. The article dealt with plaintiff's belief that sick days should be usable at the discretion of the employee. None of Mr. Morgan's supervisors ever mentioned the article to him. Morgan Dep. at 71.

The union organizing effort was most active in 1981 and 1982. *Id.* at 69. By the end of 1983 all of the union activity had ended. *Id.* Plaintiff did nothing for the union after 1983. *Id.* Some of the employees with whom plaintiff worked on union activities either quit their jobs or were fired for gambling or attacking patients. *Id.* at 60, 67, 73. Some employees who were involved in union activity are still at the Hospital. Mr. Morgan does not know of any Hospital employee who was fired for union activity. *Id.* at 87.

Prior to his discharge, plaintiff was involved in one other disciplinary proceeding relevant to this lawsuit. In the spring of 1983, the then Director of the ESD, Bertha Smith, warned plaintiff and a white co-worker, Ned French, about being out of their work area. Morgan Dep. at 80. After plaintiff objected, the warning was withdrawn, at least as to plaintiff. *Id.* at

---

1. Plaintiff has moved to strike defendant's affidavits, exhibits A through I, on the ground that they contain inadmissible hearsay statements concerning what was said to the affiants. However, as defendant points out, the alleged hearsay statements are not being used for the truth of the matter asserted, but rather are intended to show what was told to those people responsible for discharging plaintiff and, accordingly, what went into their decision. Because these statements are not being offered for their truth, they are not hearsay.

77. In a letter dated June 17, 1983, plaintiff and Mr. French objected to the warning, although by then it had been rescinded. *See* Def.'s exh. N. They claimed in the letter that they had been discriminated against because their supervisors wanted to speak to them separately about the incident. Morgan Dep. at 81, 82. While the letter indicates that copies were intended for various supervisory personnel, plaintiff did not send or deliver any copies himself and he never inquired whether Mr. French had done so. *Id.* at 85–86, 215.

The person plaintiff has been accused of assaulting, Edirson Castillo, is a Hispanic who began working in the ESD in December, 1984. Plaintiff was assigned to "show him the ropes." *Id.* at 90. On or about December 11 or 13, 1984, plaintiff, Mr. Castillo and a co-worker named Robert Peterson decided to have a drink together during their lunch break. *Id.* at 92. They bought beer at a nearby liquor store, drank the beer outside, and then went inside and sat in the lobby of the Hospital. *Id.* at 93. Mr. Castillo invited Mr. Morgan and Mr. Peterson to his house to have some drinks and watch television. *Id.* at 100. Mr. Morgan and Mr. Peterson both said that sounded good to them. *Id.*

While they were sitting in the lobby, Mr. Peterson asked Mr. Castillo if he was gay. *Id.* at 93, 94. Mr. Castillo became angry at being accused of being a homosexual and reported the incident to a supervisor, Michael Picardo. *Id.* at 95. Mr. Castillo told Mr. Picardo that Mr. Peterson had been harassing him and accused him of being a homosexual. Affidavit of Michael Picardo ("Picardo Aff."), Def.'s exh. D, at 1. Mr. Castillo denied being a homosexual and asked Mr. Picardo to intervene. Mr. Picardo began an investigation of Mr. Castillo's charges by speaking with Mr. Peterson. *Id.*

Mr. Picardo also asked Mr. Morgan what had happened. Plaintiff reported that he did not want to get involved in the dispute. Morgan Dep. at 97, 98; Picardo Aff. at 2; Exh. T. Plaintiff claims that he may later have told Mr. Picardo that Mr. Castillo was harassing him, Morgan Dep. at 179, 183, or he may not have told him that. *Id.* at 182. He did not tell Mr. Picardo that he was being *sexually* harassed by Mr. Castillo. *Id.* at 197. He did not ask Mr. Picardo to take any action, nor did he complain when Mr. Picardo took no action. *Id.* at 182.

A couple of hours later, according to plaintiff's testimony, Joe Palmorazzo told plaintiff that Ronald Silverio, an Assistant Director of the ESD, wanted Mr. Palmorazzo to investigate further. *Id.* at 100. Plaintiff told Mr. Palmorazzo that Mr. Castillo had invited him over for dinner, and that if Mr. Castillo was gay plaintiff did not want to go over for dinner because Mr. Castillo might take advantage of him. *Id.* at 101. He also told Mr. Palmorazzo that while he was mopping the floor Mr. Castillo would sometimes stand behind him and allow plaintiff to bump into him and generally would "hang around" plaintiff whenever plaintiff was on break. *Id.* at 103. Mr. Palmorazzo said he would report it to Mr. Silverio. That was the end of the conversation. *Id.* at 103, 104.

From December 11 or 13, 1984, the date of the foregoing discussions, to December 20, 1984, plaintiff had no serious problems with Mr. Castillo. *Id.* at 108, 109. On Friday, December 21, 1984, however, the day after a Hospital Christmas party, plaintiff complained to his immediate supervisor, Agnes Phillips, who is black, about Mr. Castillo's behavior. This was the first time that plaintiff had spoken to Ms. Phillips about Mr. Castillo. *Id.* at 108; Affidavit of Agnes Phillips ("Phillips Aff."), Def.'s exh. B, at 1. Plaintiff told Ms. Phillips that at the Christmas party the night before, Mr. Castillo had told plaintiff he liked him and had asked Mr. Morgan to dance with him. Morgan Dep. at 110. He also told her that Mr. Castillo would stand behind him as he was mopping the floors and cause him to bump into Mr. Castillo. *Id.* at p. 110. Ms. Phillips was surprised to hear this report. *Id.* Ms. Phillips told plaintiff that she would discuss the matter with her supervisor and get back to plaintiff that same day. *Id.;* Phillips Aff. at 2.

Ms. Phillips' immediate supervisor was Winthrop Huyghue, an Assistant Director

in the ESD. Phillips Aff. at 2. He was not at work that day, so Ms. Phillips met with Mr. Silverio. Ms. Phillips and Mr. Silverio determined that Mr. Castillo was not at work that day and, therefore, there was no threat of any immediate incident between Mr. Morgan and Mr. Castillo. Phillips Aff. at 3. Ms. Phillips and Mr. Silverio examined the posted work schedule and determined that plaintiff and Mr. Castillo were not scheduled to work together until Wednesday, December 26, five days later. They agreed that Ms. Phillips would discuss the matter with Mr. Huygue on December 24, so that appropriate action could be taken before plaintiff and Mr. Castillo again worked the same shift. *Id.* Ms. Phillips spoke again to plaintiff telling him that she could not do anything that day because Mr. Castillo was not at work, but that she would get back to him. Morgan Dep. at 117, 118. Plaintiff said, "We'll see," and that was the end of the conversation. *Id.* at 118.

As anticipated, plaintiff did not see Mr. Castillo at work that day. *Id.* Mr. Morgan also worked the next two days, Saturday and Sunday, December 22 and 23. *Id.* at 119. As he left the Hospital on December 23, plaintiff intentionally avoided checking the work schedule for the following day. *Id.* at 120. Members of the ESD were expected to review the schedule each day and report to work as scheduled. Phillips Aff. at 3.

On Monday, December 24 at about 5:30 a.m. plaintiff arrived at the sign-in area of the ESD. One of his supervisors showed him the work schedule indicating he was not scheduled to work that day. Morgan Dep. at 121. Plaintiff left the Hospital and, on his way home, cut through the Massachusetts Eye and Ear Infirmary. *Id.* at 124. On Fruit Street, immediately outside the Hospital, plaintiff encountered Mr. Castillo, who was about to report to work, and struck him in the face. *Id.* at 126. Plaintiff is 6'2" and weighs about 280 pounds. Report of the Grievance Committee, Def.s' Exh. P, at 2. Mr. Castillo is 5'5" and weighs about 138 pounds. *Id.* Plaintiff contends that Castillo approached plaintiff with his arm and hand stretched out toward plaintiff's crotch, and that plaintiff accidently struck Castillo's face while trying to push Castillo's arm and hand away. After striking Mr. Castillo, plaintiff did not apologize or say anything to him. Morgan Dep. at 127. Plaintiff went home and had no contact with the Hospital until December 25, 1984. *Id.* at 128.

Soon after plaintiff left the sign-in room of the ESD, Mr. Castillo entered the room, crying. Phillips Aff. at 3. He told Ms. Phillips that he had been walking through the corridor of the Massachusetts Eye and Ear Infirmiry on his way to work and had met plaintiff going the other way. *Id.* at 3. He said that plaintiff had asked him to step outside. When they were outside plaintiff had turned and, without provocation, punched Mr. Castillo in the face. Phillips Aff. at 3. Mr. Castillo was treated at the Hospital Emergency Room on December 24, 1984 and was found to have three fractures in his face. Affidavit of Dana Moss ("Moss. Aff")., Def.'s exh. G, at 3. As a result of the injuries to his face, Mr. Castillo missed a number of days of work. This disrupted the operation of the ESD. Huyghue Aff. at 4; Moss Aff. at 3.

On December 24, 1984, Ms. Phillips reported to Mr. Huyghue that plaintiff had told her that Mr. Castillo had sexually harassed him on December 20 at a Christmas party. She also told Mr. Huyghue that plaintiff had threatened to "punch out" Mr. Castillo if the Hospital did not take any action, and that Ms. Phillips had advised plaintiff that fighting was grounds for dismissal. Huyghue Aff. at 1–2; Phillips Aff. at 3–4. After meeting with Ms. Phillips, Mr. Huyghue discussed the incident with Mr. Castillo. Mr. Castillo told Mr. Huyghue that he had been walking to work through the corridor of the Massachusetts Eye and Ear Infirmary, had met plaintiff, had gone outside onto Fruit Street at plaintiff's request, and that without provocation plaintiff had struck him in the face. Huyghue Aff. at 2. Castillo also told Mr. Huyghue that he, Castillo, was not a homosexual and that he had never sexually harassed plaintiff. *Id.*

After Mr. Huyghue spoke to Mr. Castillo, he met with the Hospital's Employee Relations Office. They recommended that Mr. Huyghue investigate the matter, speak to plaintiff, and place plaintiff on investigatory suspension with pay pending the investigation. Huyghue Aff. at 2–3. Mr. Huyghue met with plaintiff on December 25 and asked what had happened. *Id.* at 3. Plaintiff stated that Castillo had made passes at him at the Christmas party, Morgan Dep. at 132, but also stated that the assault should be of no concern to the Hospital because it took place off Hospital premises and outside of plaintiff's work time. *Id.* at 132–33; Huyghue Aff. at 3. Mr. Huyghue suspended plaintiff *with* pay, Morgan Dep. at 172; Huyghue Aff. at 3, telling him he would get back in touch with him. Morgan Dep. at 134.

Mr. Huyghue again met with the Employee Relations Office. They agreed that Mr. Huyghue had three options: to issue plaintiff a final warning, to suspend him, or to terminate him. Moss Aff. at 3; Huyghue Aff. at 3. Mr. Moss, the Employee Relations Representative, recommended that plaintiff be terminated because of the seriousness of the offense and the disruption it caused within the ESD. This was merely a recommendation, however. The decision was left to Mr. Huyghue. Moss Aff. at 3; Huyghue Aff. at 3. No one at the Hospital had ordered or suggested to Mr. Moss that he make this recommendation. Mr. Moss had had no contact with plaintiff or Mr. Castillo before this incident in his capacity as a member of the Employee Relations Office. Moss Aff. at 2.

Mr. Huyghue then analyzed the case and drew the following conclusions. First, he could see no justification for plaintiff's assault on Mr. Castillo. There was no substantiated evidence that plaintiff's allegations were true. But even if they were, he thought they certainly did not justify an assault. Second, plaintiff had struck Mr. Castillo without giving the Hospital any chance to investigate and respond to the allegations of harassment. Third, plaintiff's assault had disabled Mr. Castillo and disrupted the ESD staff and operations. Fourth, the ESD could not function if it were considered to condone assaults upon fellow employees. Fifth, the Hospital's Employee Handbook, Def.'s exh. K, in effect at the time stated that serious offenses, such as threats of bodily assault, were cause for discharge without notice. Sixth, several things, individually and severally, indicated that plaintiff's assault was premeditated and not accidental; these included plaintiff's arrival at the Hospital on a date he was not scheduled to work, plaintiff's argument that he could not be terminated for assaulting an employee off Hospital premises, Mr. Castillo's report that plaintiff had asked him to step outside, the magnitude of Mr. Castillo's injuries, and Ms. Phillips' report that plaintiff had threatened to punch out Mr. Castillo. Huyghue Aff. at 3–4.

That same day, December 26, 1984, Mr. Huyghue met with plaintiff and Thomas Fabiano, Assistant Director of the ESD. Mr. Huyghue stated that he had decided to terminate plaintiff. *Id.;* Morgan Dep. at 137. Mr. Huyghue gave plaintiff a letter notifying him of the termination. Def.'s exh. Q.

Mr. Huyghue states that his sole reason for terminating plaintiff was that as a result of a work-related dispute, plaintiff took matters into his own hands, disregarding Hospital policy, and struck and injured another employee while that employee was on his way to work. Huyghue states that he never considered the fact that plaintiff was black, had participated in union activities in prior years, or had complained of sexual advances by Mr. Castillo. Huyghue Aff. at 4. Mr. Huyghue decided that no disciplinary action was necessary as to Mr. Castillo because there was no conclusive evidence that plaintiff's allegations were accurate and because Mr. Castillo had been seriously injured and was absent from work. *Id.*

Later that day plaintiff complained to Mr. Moss about the termination. Mr. Moss explained the grievance procedure. Morgan Dep. at 145. In his meeting with Mr. Moss, plaintiff did not assert that he had been terminated because of his race, past union activities or allegations of sexual

harassment. *Id.;* Moss Aff. at 4. Plaintiff subsequently submitted a grievance statement to the grievance committee. Def.'s exh. R. In it plaintiff wrote that the harassment by Castillo had begun December 17 and that since then he had:

> been constantly harassed by a fellow employee by the name of Ed Castillo. While I was working, he would continually stare at me making me feel uncomfortable. Although he offered no verbal abuse towards me, his mannerisms were quite suggestive.

The statement made no claim that plaintiff's termination was based on his race, past hospital activities or complaints of sexual harassment.

Pursuant to the normal grievance procedures, plaintiff chose the grievance panel from a list provided to him. Morgan Dep. at 152. Susan Nugent, a member of the Employee Relations Office, met with plaintiff when he submitted his grievance statement concerning his termination, and when he selected the members to serve on the Grievance Review Committee. She informed plaintiff that the Committee he selected would speak to anyone involved in his termination who could provide information that would be pertinent to a recommendation that would be made by the Committee to J. Robert Buchanan, M.D., the General Director of the Hospital. Affidavit of Susan Nugent ("Nugent Aff.), Def.'s exh. F, at 2.

Dr. Lamont–Havers was the Committee Chairman. Def.'s Exh. P. Before serving on the Committee, Dr. Lamont–Havers had had no contact with plaintiff, Mr. Castillo, Mr. Huyghue or Ms. Phillips. Affidavit of Dr. Ronald Lamont–Havers ("Lamont–Havers Aff."), Def.'s exh. H, at 1. On January 17, 1985, the Committee heard testimony from plaintiff, Mr. Castillo, Dana Moss, Agnes Phillips and Winthrop Huyghue. It then issued a written report dated January 23, 1985. Def.'s exh. P. The Committee reported the testimony of the various witnesses and recommended that Mr. Morgan's termination be sustained. In its findings, the Committee concluded that "an employee was attacked as he was reporting to work resulting in bodily harm to him and a great inconvenience to the Hospital." Def.s exh. P. The Committee concluded that plaintiff intentionally struck Mr. Castillo in the face, in contravention of Hospital policy prohibiting fighting. *Id.* The Committee further found that plaintiff was fully aware of this policy. The Committee also concluded it was irrelevant that plaintiff attacked Mr. Castillo off Hospital grounds, since the assault was clearly work-related and unwarranted. The Committee concluded that the Hospital could not tolerate physical attacks by one employee on another for Hospital related disputes. *Id.*

Dr. Buchanan reviewed the report and recommendations of the Grievance Review Committee. Affidavit of D. Robert Buchanan ("Buchanan Aff."), Def.'s exh. T, at 1; Def.'s exh. S. He concluded that the termination was justified because plaintiff had assaulted another employee, inflicting bodily injury and causing the ESD a hardship, after he had been warned against fighting. Def.'s exh. S. For those reasons, the termination remained in force.

At all times relevant to this dispute, the Hospital had written policies concerning affirmative action, Def.'s exh. W, and sexual harassment, Def.'s exh. U, which stated that the Hospital was opposed to sexual harassment and to discrimination of any form in its policies, practices and procedures. Affidavit of Thomas Rothwell ("Rothwell Aff."), Def.'s exh. C.

### B. *Discussion*

#### 1. Summary Judgment Standard.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. P. 56(c). "[T]he court must look at the record in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party." *Stepanischen v. Merchants Despatch*

*Transportation Corp.*, 722 F.2d 922, 928 (1st Cir.1983).

> Functionally the theory underlying a motion for summary judgment is essentially the same as the theory underlying a motion for directed verdict. The crux of both theories is that there is no genuine issue of material fact to be determined by the trier of fact, and that on the law applicable to the established facts, the movant is entitled to judgment.

*Fidler v. Eastman Kodak Co.*, 714 F.2d 192, 198 (1st Cir.1983) (quoting 6 *Moore's Federal Practice* ¶ 56.02[10], at 56–43).

"[T]o defeat a summary judgment motion, the non-moving party must demonstrate the existence of a genuine issue of material fact pertaining to those issues on which it would bear the burden of proof at trial." *Kauffman v. Puerto Rico Telephone Co.*, 841 F.2d 1169, 1171 (1st Cir. 1988). "A genuine issue is 'one in which the party opposing summary judgment provides evidence "such that a reasonable jury could return a verdict for the nonmoving party." ' " *Daury v. Smith*, 842 F.2d 9, 11 (1st Cir.1988) (quoting *Perez De La Cruz v. Crowley Towing & Transportation Co.*, 807 F.2d 1084, 1086 (1st Cir.1986), *cert. denied*, 481 U.S. 1050, 107 S.Ct. 2182, 95 L.Ed.2d 838 (1987) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986))). "Thus, summary judgment is proper when, after adequate time for discovery, the party against whom judgment is sought fails to show sufficient basis for the establishment of an essential element of its case." *Kauffman*, 841 F.2d at 1172.

■ Finally, while "[a] court must be 'particularly cautious' about granting summary judgment when the state of mind of one of the parties is in issue ... the existence of state of mind does not 'automatically preclude summary judgment.' " *Denton v. International Brotherhood of Boiler Makers*, 653 F.Supp. 55, 59 (D.Mass.1986) (quoting *Stepanischen*, 722 F.2d at 928–29). The party opposing the motion must still offer "concrete evidence from which a reasonable jury could return a verdict in his favor." *Anderson*, 477 U.S. at 256, 106

S.Ct. at 2514. *See also Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir.1975) (must be some indication that party opposing the motion "can produce the requisite quantum of evidence" to entitle him to a trial), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

Defendant argues that it is entitled to summary judgment on Morgan's claim that he was discharged because of his race in violation of Title VII and § 1981 because it has stated a legitimate business reason for discharging Morgan—plaintiff's unprovoked assault on a fellow worker—and plaintiff has offered insufficient evidence suggesting that the stated reason is a pretext for discrimination based on race. Similarly, defendant contends that plaintiff has offered insufficient evidence that he was discharged in retaliation for opposing defendant's discriminatory policies and/or practices. Defendant argues further that plaintiff's claims that he was wrongfully denied promotions are without merit because, by his own admission, he never sought any promotions. *See* Morgan Dep. at 174–75. Finally, defendant contends that the facts do not support a sexual harassment claim under Title VII.

2. Defendant Is Entitled to Summary Judgment On Plaintiff's Discriminatory Discharge Claim.

■ Claims of discriminatory firing have been held to fit within the analytical framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 107–8 (1st Cir.1988), and cases cited therein. Under *McDonnell Douglas Corp.* the burdens of proof in a Title VII disparate treatment case are as follows:

> First, plaintiff has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." ... Third, should the defendant carry this burden, the plaintiff must then have an opportunity

to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas Corp,* 411 U.S. at 802, 93 S.Ct. at 1824). Further, these same "principles are applicable to a claim of intentional discrimination under 42 U.S.C. § 1981." *T & S Service Assoc. Inc. v. Crenson,* 666 F.2d 722, 724 (1st Cir.1981). *See also Carter v. Duncan–Huggins, Ltd.,* 727 F.2d 1225, 1232 (D.C.Cir.1984).

■■■■ To establish a *prima facie* case of discriminatory discharge, a plaintiff must show that (i) he belonged to a protected class; (ii) his job performance was satisfactory; (iii) he was discharged; and (iv) after he was discharged the position remained open and the employer continued to seek applicants from persons of the plaintiff's qualifications. *Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir.) (citing *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). The First Circuit has recognized "that a complainant's initial burden of establishing a *prima facie* case of disparate treatment is not onerous." *Johnson v. Allyn & Bacon, Inc.,* 731 F.2d 64, 70 (1st Cir.) (citing *Texas Dept. of Community Affairs,* 450 U.S. at 253–54, 101 S.Ct. at 1093–94), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984). Moreover,

> (w)here the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff."

*Johnson,* 731 F.2d at 70 (quoting *U.S. Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983)). Accordingly, "a reviewing court 'need not linger long over the question of whether [the plaintiff] in fact established a prima facie case' if the defendant has met its burden of articulating legitimate non-discriminatory reasons for its actions." *Johnson,* 731 F.2d at 70 (quoting *Sweeney v. Research Foundation of S.U.N.Y.,* 711 F.2d 1179, 1184 (2d Cir. 1983)). "Instead, the reviewing court may focus on 'the ultimate question of discrimination *vel non.*'" *Johnson,* 731 F.2d at 70 (quoting *Sweeney,* 711 F.2d at 1184).

Although defendant in this case briefly argues that plaintiff has not made out a prima facie case of race discrimination, defendant does not make this argument strenuously, deeming it "more economical" to address plaintiff's lack of evidence suggesting that the defendant's stated reasons are pretextual. Similarly, while plaintiff does not appear to have satisfied the fourth element of a *prima facie* case, the court will disregard this and address the issues of whether defendant has stated a legitimate business reason for its action and, if so, whether the evidence creates a genuine dispute concerning whether the asserted reason is a pretext for discrimination.

At step two of the analysis, "[t]he burden ... shifts to the employer to articulate some legitimate, nondiscriminatoray reason for" its action(s). *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. *See also Menzel v. Western Auto Supply Co.,* 848 F.2d 327, 328 (1st Cir.1988) (once the *prima facie* "stage is passed the burden shifts to the defendant to produce some evidence of non-discriminatory reasons for the dismissal").

> The defendant's burden to "articulate" a legitimate reason is not a burden to persuade the court that he was in fact motivated by that reason and not by a discriminatory one. "Rather, it is a burden of production—i.e., a burden to articulate or state a valid reason." The defendant can accomplish this by introducing "admissible evidence which would allow the trier of facts rationally to conclude that the employment decision had not been motivated by a discriminatory animus." ... Defendant's burden of production can be met if the evidence presented by him setting forth the reasons for [firing]

the plaintiff "raises a genuine issue of fact as to whether [defendant] discriminated against plaintiff." Finally, the defendant's explanation of its reasons must be clear and reasonably specific.

*Johnson*, 731 F.2d at 70 (citations omitted).

■ Defendant in this case contends that plaintiff was discharged because, as the culmination of a work-related dispute, he physically assaulted a co-worker without provocation. Plaintiff contends, however, that defendant's asserted reason is not a legitimate, non-discriminatory reason because defendant should not be concerned with an employee's actions occurring while the employee is off-duty and off the Hospital's property, and because there is a genuine issue of fact as to whether plaintiff was merely defending himself when he struck Castillo.

The court finds that the Hospital has met its burden at this stage of the analysis. Plaintiff's arguments are not relevant to the question whether defendant has stated a legitimate reason for its action, but rather go to the issue of whether the asserted justification is a pretext. Accordingly, they are addressed below.

■ Once the employer articulates a legitimate, non-discriminatory business reason for its action, the inference of discrimination arising from the plaintiff's *prima facie* case dissolves,[2] and the burden is on the plaintiff to prove by a preponderance of the evidence "that the proffered reason was not the true reason for the employment decision." *Johnson*, 731 F.2d at 70–71 (quoting *Texas Dept. of Community Affairs*, 450 U.S. at 256, 101 S.Ct. at 1095). That is, the plaintiff must show that the employer's articulated reason "was a pretext for discrimination." *Johnson*, 731 F.2d at 71.

■ At this stage, the plaintiff's burden of proving pretext,

> merges with the ultimate burden of persuading the court that [he] has been the

victim of intentional discrimination. [The plaintiff] may succeed in [proving pretext] either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Texas Dept. of Community Affairs*, 450 U.S. at 256, 101 S.Ct. at 1095.

■ A plaintiff "cannot meet his burden of proving 'pretext' simply by refuting or questioning the defendants' articulated reason." *White v. Vathally*, 732 F.2d 1037, 1042 (1st Cir.), *cert. denied*, 469 U.S. 933, 105 S.Ct. 331, 83 L.Ed.2d 267 (1984).

> Merely casting doubt on the employer's articulated reason does not suffice to meet the plaintiff's burden of demonstrating discriminatory intent, for "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons" in the first place. To hold otherwise would impose an almost impossible burden of proving "absence of discriminatory motive."

*Dea v. Look*, 810 F.2d 12, 15 (1st Cir.1987) (quoting *White*, 732 F.2d at 1043 (quoting *Texas Dept. of Community Affairs*, 450 U.S. at 253–54, 101 S.Ct. at 1093–94)). *See also Schuler v. Polaroid*, 848 F.2d 276, 280 (1st Cir.1988). Similarly,

> it is not enough for the plaintiff to show that the employer made an unwise business decision or an unnecessary personnel move. Nor is it enough to show that the employer acted arbitrarily or with ill will. These facts, even if demonstrated, do not necessarily show that [race] was a motivating factor.

*Gray v. N.E. Tel. and Tel. Co.*, 792 F.2d 251, 255 (1st Cir.1986). Finally, "evidence contesting the factual underpinnings of the reason for the [employment decision] proffered by the employer is insufficient, without more, to present a jury question." *Dea v. Look*, 810 F.2d 12, 15 (1st Cir.1987). Rather, "[p]laintiff continues to carry the

---

**2.** Nevertheless, the underlying facts used by plaintiff to establish a *prima facie* case may be probative of the ultimate issue of unlawful discrimination. *See Gray v. N.E. Tel. and Tel. Co.*, 792 F.2d 251, 254 (1st Cir.1986); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1015 n. 14 (1st Cir. 1979).

burden of showing discriminatory intent, and the relevant question is whether the given reason was a pretext *for discrimination.*" *Id.* (emphasis added). Bare allegations, without more, are insufficient to raise a genuine issue concerning the existence of discriminatory intent. *See Manego v. Cape Cod Five Cents Sav. Bk.*, 692 F.2d 174, 177 (1st Cir.1982).

▆▆▆ Plaintiff has offered no direct evidence of discrimination. As mentioned above, plaintiff attempts to prove pretext by arguing that defendant had no right to discharge him for conduct occurring off the Hospital's property while plaintiff was off-duty, and that there is at least a genuine issue of fact as to whether plaintiff struck Castillo intentionally. However, plaintiff cannot prove pretext merely by disputing the objective correctness of defendant's decision. *See Menard v. First Security Services Corp.*, 848 F.2d 281, 287 (1st Cir. 1988); *Loeb*, 600 F.2d at 1012 n. 6. Nor can he do so by challenging the factual underpinnings of defendant's reason for discharging him. *Dea*, 810 F.2d at 15. Even if Morgan were able to demonstrate that the Hospital mistakenly believed he was the aggressor and that, in discharging Morgan, the Hospital acted on matters of purely private concern, these facts would not tend to show that *race* was a motivating factor in Morgan's discharge. *See Gray*, 792 F.2d at 255.

At his deposition, plaintiff took the position that he believed he was discriminated against because he was discharged whereas Castillo was not. Morgan Dep. at 151–52. It is true plaintiff can show pretext by presenting evidence that other, non-black employees in plaintiff's position were not terminated. *See Menzel*, 848 F.2d at 329. However, while Morgan is black, Castillo is Hispanic. Thus, Castillo also is a member of a group protected by Title VII. Further, the circumstances of this case indicate that, at least in defendant's view, plaintiff and Castillo were *not* similarly situated. Defendant had determined that Morgan, rather than Castillo, instigated the altercation leading to Morgan's discharge. Thus, defendant's failure to discharge Castillo does not give rise to an inference of race dis-

crimination. *See, Green v. Armstrong Rubber Co.*, 612 F.2d 967 (5th Cir.1980), *cert. denied*, 449 U.S. 879, 101 S.Ct. 227, 66 L.Ed.2d 102 (1980).

Finally, plaintiff appears to argue that race discrimination may be inferred from the fact that he was not given a warning or an opportunity to improve, a full investigation was not performed, and he was not provided with a full and fair hearing prior to being discharged. The simple answer to this argument is that the record shows that extensive procedural mechanisms and safeguards were provided to plaintiff prior to his discharge. The termination decision was reviewed by a number of people who had no prior knowledge of plaintiff's situation. Thus, plaintiff's argument simply is without merit. As stated earlier, the result might be different if plaintiff were able to demonstrate that other, non-black employees in plaintiff's position were treated differently. However, there is no evidence to support any such suggestion.

In conclusion, the court finds that summary judgment is appropriate on plaintiff's claim that he was discharged on the basis of race because he has failed to raise a genuine issue as to whether defendant's asserted reason for firing him was a pretext for discrimination.

3. Defendant Is Entitled To Summary Judgment On Plaintiff's Claim That He Was Fired In Retaliation For Opposing Defendant's Discriminatory Policies And Practices.

▆▆▆ Plaintiff alleges that he was discharged in retaliation for opposing defendant's discriminatory policies and practices. *See* 42 U.S.C. § 2000e–3(a). Such claims are subject to the *McDonnell Douglas* framework for analysis. *See Oliver v. Digital Equipment Corp.*, 846 F.2d at 103, 107–8; *Rowlett v. Anheuser–Busch, Inc.*, 832 F.2d 194, 202–03 (1st Cir.1987); *Hochstadt v. Worcester Foundation for Experimental Biology, Inc.*, 425 F.Supp. 318, 324 (D.Mass.), *aff'd*, 545 F.2d 222 (1st Cir. 1976). To establish a *prima facie* case of retaliatory discharge plaintiff must show:

(1) that [he] engaged in protected activity, i.e., [he] opposed unlawful employment practices or participated in Title VII proceedings, (2) that [his] employer was aware of the protected activities, (3) that [he] was subsequently discharged, and (absent other evidence tending to establish a retaliatory motivation) (4) that [his] discharge followed his protected activities within such period of time that the court can infer retaliatory motivation.

*Hochstadt*, 425 F.Supp. at 324. Once the foregoing elements are established, the burden shifts to the defendant to articulate a legitimate business reason for its action. *Id.* If the employer is able to do so, the plaintiff then must prove that the articulated reason is a pretext for retaliation. *Id.*

Plaintiff's retaliatory discharge claim arises out of (a) his allegations that he was a core union organizer in 1979 and actively sought to improve working conditions; (b) his 1982 article opposing certain of defendant's sick time policies; (c) his June, 1983 letter allegedly complaining of discriminatory treatment; and (d) his complaints about Castillo. Defendant argues that plaintiff is unable to establish elements (1), (2) and (4) of a *prima facie* case. However, while this is true as to plaintiff's claims involving union activity, the 1982 article and the 1983 letter, the court concludes plaintiff might be able to prove a *prima facie* case of discharge in retaliation for his complaints about Castillo's sexual harassment. Nevertheless, summary judgment is appropriate on this claim because plaintiff has not offered evidence adequate to create a genuine dispute as to whether defendant's articulated reason for firing him is a pretext for retaliation.

■ As to plaintiff's union organizing activity, plaintiff has not specified any particular prohibited practices which he opposed and/or sought to change. As to the 1982 article, it is true that in March of 1982, plaintiff wrote an article in a Hospital newspaper in which he argued that employees should be able to use their sick days whether or not they were sick, that employ-

ees with lengthy illnesses should not lose seniority simply because they missed a large amount of work, and that employees should be able to take all or part of their accumulated sick time in pay when they left their employment at the hospital. *See* Def.'s exh. M. As defendant points out, however, this article did not purport to oppose any prohibited conduct by defendant. Accordingly, even if plaintiff were fired for writing the article, he would not have been fired for opposing a practice made unlawful by Title VII. *See* 42 U.S.C. § 2000e-3(a).

Defendant also contends that plaintiff's June 1983 letter in which he and a co-worker complained about being warned for leaving their work area similarly does not constitute opposition to unlawful conduct. This presents a closer question. In the letter, plaintiff and his co-worker stated that "our case was separated in a discriminatory way and John Morgan because he is black was made to feel extreme and unreasonable for even appealing to personnel." Def.'s exh. N. At his deposition, plaintiff explained that the basis for this statement was that defendant had wanted to speak to plaintiff and his co-worker *separately* about the incident. *See* Morgan Dep. at 81–82. Defendant argues plaintiff could not reasonably have believed that it was unlawful for defendant to interview plaintiff and his co-worker separately. However, while this may be true, it does not necessarily end the inquiry. In *Monteiro v. Poole Silver Co.*, 615 F.2d 4 (1st Cir. 1980), the Court of Appeals for the First Circuit expressly declined to decide whether § 2000e-3(a) requires a "reasonable belief" that the opposed activity violates Title VII, or, alternatively, merely a "conscientiously held belief." *See id.* at 8 n. 5. While it arguably may have been unreasonable for plaintiff to believe he had been discriminated against because of his race, it is less clear that he did not conscientiously believe this to be the case. Thus, to conclude that plaintiff's June, 1983 letter did not constitute opposition activity under 42 U.S.C. § 2000e-3(a), this court would have to decide what the First Circuit declined to

decide in *Monteiro*—that § 2000e–3(a) requires an objective standard.

██ Nevertheless, even if the June, 1983 letter constitutes protected opposition activity, plaintiff is unable to satisfy elements (2) and (4) of a retaliatory discharge *prima facie* case arising out of the letter. With regard to the second element, employer knowledge, there is no evidence that any of the people responsible for plaintiff's discharge ever saw the June, 1983 letter or were aware of its contents. *See* Morgan Dep. at 86; Buchanan Aff. ¶ 5. As to the fourth element, proximity in time, plaintiff's discharge in December, 1984 did not occur soon enough after the March, 1982 newspaper article or the June, 1983 letter to suggest retaliation. *Compare Rowlett*, 832 F.2d at 202 (discharge occurring 9 months after the filing of a race discriminatory charge was sufficient to create an inference of retaliation) *with Oliver*, 846 F.2d at 110–11 (no inference of retaliation where discharge occurred 33 months after plaintiff filed a claim with the EEOC). Plaintiff's discharge in this case occurred 19 months after plaintiff wrote the June, 1983 letter, and 33 months after he wrote the March, 1982 newspaper article. This court concludes that too much time elapsed between plaintiff's discharge and his purported opposition activity to allow a jury to infer from the timing that the discharge was retaliatory. Nor is there any other evidence indicating that plaintiff's discharge was motivated by the 1983 letter.

██ Finally, plaintiff appears to argue that he was fired in retaliation for complaining about Castillo's sexual advances. Because sexual harassment is a prohibited activity under Title VII, *see Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), an employer should be prohibited from retaliating against an employee for opposing such activity. Additionally, plaintiff was discharged soon after complaining about Castillo. Thus, it appears plaintiff would be able to establish a *prima facie* case of discharge in retaliation for opposing sexual harassment. Nevertheless, even if plaintiff is able to do so, he must still demon-

strate that defendant's articulated reason for discharging him—plaintiff's assault on Castillo—was mere pretext. However, there is no direct evidence suggesting that plaintiff's complaints about Castillo's conduct were the true reason for his termination. Moreover, in view of the undisputed evidence of the injury plaintiff inflicted on Castillo, the mere fact that plaintiff was discharged shortly after complaining about Castillo would be insufficient to permit a jury to infer properly that the complaint was the real reason for the firing.

4. Defendant Is Entitled To Summary Judgment On Plaintiff's Claim That He Was Wrongfully Denied Promotions.

Plaintiff alleges in the Amended Complaint that he was denied promotions because of his race. However, he does not appear to be maintaining this claim. Plaintiff's attorney did not address this claim in his brief and did not argue it at the hearing on defendant's motion for summary judgment. It is, in any event, unmeritorious. At his deposition, plaintiff was unable to identify any promotion which he applied for but was refused. *See* Morgan Dep. 174–75. Thus, summary judgment is appropriate on this claim.

5. Defendant Is Entitled To Summary Judgment On Plaintiff's Claim That He Was Sexually Harassed.

██ also has brought a claim of sexual harassment under Title VII and § 1981. However, sex discrimination in employment is not actionable under § 1981. *See, Runyon v. McCrary*, 427 U.S. 160, 167, 96 S.Ct. 2586, 2592–93, 49 L.Ed.2d 415 (1976); *DeGraffenreid v. General Motors Assembly Div.*, 558 F.2d 480, 486 n. 2 (8th Cir.1977); *St. Louis v. Alverno College*, 744 F.2d 1314, 1317 (7th Cir.1984); *Melanson v. Rantoul*, 421 F.Supp. 492, 499 (D.R.I.1976), *aff'd*, 561 F.2d 409 (1st Cir.1977). In addition, while courts, including the Supreme Court, have recognized a cause of action for sexual harassment under Title VII, plaintiff in this case has failed to raise a genuine issue of fact with regard to such a claim.

The Equal Employment Opportunity Commission ("EEOC") guidelines, 29 C.F.R. 1604.11, define actionable sexual harassment as follows:

(a) Harassment on the basis of sex is a violation of sec. 703 of Title VII. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly as a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonable interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

Although the EEOC guidelines are not binding on the federal courts, courts use them for guidance, *General Electric Co. v. Gilbert,* 429 U.S. 125, 141–42, 97 S.Ct. 401, 410–11, 50 L.Ed.2d 343 (1976), and perform a similar or identical analysis. *See, Meritor Savings Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986); *Henson v. City of Dundee,* 682 F.2d 897, 903, 905 (11th Cir.1982); *Bundy v. Jackson,* 641 F.2d 934, 953 (D.C.Cir. 1981).

Plaintiff in this case does not appear to allege, nor could he, that he was subjected to the type of sexual harassment described in subsections (a)(1) and (a)(2) of the foregoing regulation. Rather, plaintiff asserts that Castillo's sexual advances created an intimidating hostile or offensive working environment in which the hospital acquiesced by allowing it to continue despite plaintiff's complaints to his superiors.

In *Meritor,* the Supreme Court discussed the availability under Title VII of sexual harassment claims involving a hostile work environment. There the Court stated that, "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive work environment.'" *Meritor,* 477 U.S. at 67,

106 S.Ct. at 2406 (quoting *Henson,* 682 F.2d at 904). In addition, while the majority in *Meritor* declined to articulate the circumstances under which an employer may be held liable for sexual harassment inflicted upon an employee by a supervisor, it did state "that Congress wanted courts to look to agency principles for guidance in this area." 477 U.S. at 72, 106 S.Ct. at 2408. Thus, although "employers are [not] always liable for sexual harassment by their supervisors ... absence of notice to an employer does not necessarily insulate that employer from liability." *Id.* The four member minority in *Meritor* went further than the majority and adopted the test for employer liability articulated by the EEOC:

With respect to conduct between fellow employees, an employer is responsible for acts of sexual harassment in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action.

*Id.* at 74, 106 S.Ct. at 2409 (Marshall, J., joined by Brennan, J., Blackmun, J., and Stevens, J., concurring in the judgment) (quoting 29 C.F.R. § 1604.11(d) (1985)).

The Court of Appeals for the Sixth Circuit has stated that:

to prevail in a Title VII offensive work environment sexual harassment action, the plaintiff must assert and prove that: (1) the employee was a member of a protected class; (2) the employee was subjected to unwelcomed sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfereing with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment that affected seriously the psychological wellbeing of the plaintiff; and (5) the existence of respondeat superior liability.

*Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 619–20 (6th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987); *Highlander v. K.F.C. National Management Co.*, 805 F.2d 644, 649 (6th Cir.1986). The Sixth Circuit stated further that the question whether a particular working environment is sufficiently hostile or abusive to warrant recovery requires a two part inquiry: first, the trier of fact,

> must adopt the perspective of a reasonable person's reaction to a similar environment under essentially like or similar circumstances. Thus, in the absence of conduct which would interfere with that hypothetical reasonable individual's work performance and affect seriously the psychological well-being of the reasonable person under like circumstances, a plaintiff may not prevail on asserted charges of sexual harassment anchored in an alleged hostile and/or abusive work environment regardless of whether the plaintiff was actually offended by the defendant's conduct.

*Rabidue*, 805 F.2d at 620.

If the plaintiff satisfies the foregoing objective standard, the court should then engage in a subjective analysis,

> Assuming that the plaintiff has successfully satisfied the burden of proving that the defendant's conduct would have interfered with a reasonable individual's work performance and would have affected seriously the psychological well-being of a reasonable employee, the particular plaintiff would nevertheless also be required to demonstrate that [he] was actually offended by the defendant's conduct and that [he] suffered some degree of injury as a result of the abusive and hostile work environment.

> Accordingly, a proper assessment of an employment environment that gives rise to a sexual harassment claim would invite consideration of such objective factors as the nature of the alleged harassment, the background and experience of the plaintiff, [his] coworkers, and supervisors, the totality of the physical environment of the plaintiff's work area, the lexicon of obscenity that pervaded the environment of the workplace both

before and after the plaintiff's introduction into its environs, coupled with the reasonable expectation of the plaintiff upon voluntarily entering that environment. Thus, the presence of actionable sexual harassment would be different depending upon the personality of the plaintiff and the prevailing work environment and must be considered and evaluated upon an ad hoc basis.

*Id.*

Finally, the Sixth Circuit in *Rabidue* distinguished sexual harassment by a supervisor from harassment by a peer in the workplace. While recognizing that the Supreme Court in *Meritor* "declined to issue a definitive rule on employer liability arising from the acts of supervisory personnel in sexually hostile environment cases," *Rabidue*, 805 F.2d at 621 n. 6, where the harassment allegedly was inflicted by a peer the plaintiff must prove "that the employer, through its agents or supervisory personnel, knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Id.* at 621. "The promptness and adequacy of the employer's response to correct instances of alleged sexual harassment is of significance in assessing a sexually hostile environment claim and the employer's reactions must be evaluated on a case by case basis." *Id.*

■ Defendant first argues that the sexual harassment complained of in this case was not sufficiently severe and pervasive to be actionable under Title VII. Defendant is correct. Prior to the Christmas party on December 20, 1984, Morgan's only complaints of harassment were that Castillo would stand behind plaintiff and allow plaintiff to bump into him while plaintiff was mopping, that Castillo would "hang around plaintiff a lot," Morgan Dep. at 211, and that Castillo would stand next to plaintiff in the men's room and "peep" at plaintiff's "privates." *Id.* at 212. However, plaintiff also acknowledged that he did not view these things as "being problems." *Id.* at 108. Then, at the Christmas party on December 20, Castillo took plain-

tiff by the arm and asked him to dance. *Id.* at 111–12. Plaintiff decided to leave the party because of Castillo's advances.

The foregoing facts do not describe conduct which would interfere with a reasonable person's work performance and seriously affect his psychological well-being. The acts complained of in this case were much less egregious than those in cases in which relief has been granted. *See, e.g., Meritor Sav. Bk.*, 477 U.S. at 60–61, 106 S.Ct. at 2402–03 (repeated sexual demands by supervisor; intercourse 40–50 times); *Bundy*, 641 F.2d at 939–40 (D.C.Cir.1981) (plaintiff's supervisors "continually" made sexual advances toward her over a period of about a year, including questioning her about her "sexual proclivities"); *Henson*, 682 F.2d at 899 (plaintiff was subjected "to numerous harangues of demeaning sexual inquiries and vulgarities throughout the course of" her two years of employment, including repeated requests by her boss "that she have sexual relations with him"); *Katz v. Dole*, 709 F.2d 251, 254 (4th Cir. 1983) (plaintiff's workplace was "pervaded with sexual slur, insult and inuendo," and plaintiff herself was subjected to "extremely vulgar and offensive sexually related epithets" by her supervisors and coworkers); *Priest v. Rotary*, 634 F.Supp. 571 (N.D.Cal.1986) (plaintiff was subjected to constant unwelcome kissing, fondling, rubbing, sexual conduct, displays of pornography and even sexual exposure on the part of her supervisor). *Compare, e.g., Rabidue*, 805 F.2d at 622 (single employee's vulgarity, coupled with display of sexually oriented posters, did not result in a working environment which could be considered intimidating, hostile or offensive); *Highlander*, 805 F.2d at 650 (isolated sexual advances by a coworker and a supervisor, along with "crude" conversations pervading plaintiff's workplace, did not constitute sexual harassment where plaintiff herself testified that she did not think one of the incidents was a big deal and did not want to "raise a stink" about it).

The Hospital also argues that it took immediate and appropriate corrective action once it became aware of plaintiff's harassment claim. The Hospital points out that even though Morgan discussed Castillo's actions with one of Morgan's supervisors as early as December 11, 1984, Morgan Dep. at 101–102, plaintiff did not request the supervisor to take any action at that time. *Id.* at 182. Nor did he complain when no action was taken. *Id.* Only after the Christmas party did plaintiff notify his supervisor, Agnes Phillips, that he considered Castillo's advances to be a problem. In response, Ms. Phillips told Morgan that she would discuss the matter with her supervisor and speak to Morgan again later in the day. Thereafter, Ms. Phillips consulted Mr. Silverio and it was determined that no immediate remedial action was necessary since Morgan and Castillo were not scheduled to work together again until several days later. The evidence shows, however, that they also agreed Ms. Phillips would discuss the matter with Mr. Huyghue so that appropriate action could be taken in the interim. Ms. Phillips subsequently reported to plaintiff that nothing would be done that day, but that she would get back to him later. The Hospital's response was preempted, however, by the altercation between Castillo and Morgan.

Finally, while it is difficult to discern whether plaintiff is making a claim of the type addressed in *DeGrace v. Rumsfeld*, 614 F.2d 796 (1st Cir.1980), such a claim would fail as a matter of law. In *DeGrace*, the plaintiff alleged that he had been harassed and abused by his coworkers because of his race and had subsequently been discharged for absenteeism when he left work because of the extreme abuse. The Court of Appeals for the First Circuit stated that to recover the plaintiff would have to prove 1) that he was reasonably placed in fear of his personal safety as a result of the racially motivated misconduct of his fellow employees; 2) that his employer was aware of but failed to take appropriate measures to deal with the situation; 3) that "but for" his reasonably based fear and his employer's unreasonable failure to take appropriate action plaintiff would have reported to work; and 4) that plaintiff himself acted in a reasonable manner under the circumstances. 614 F.2d at 804.

The facts of this case, do not support recovery under *DeGrace*. The racial harassment in *DeGrace* was much more severe than the sexual harassment alleged in this case. In *DeGrace*, the plaintiff had been put in fear of his personal safety. Moreover, as mentioned earlier, a reasonable trier of fact could not find that the Hospital or plaintiff's supervisors knew about Castillo's sexual advances and failed to take prompt and appropriate corrective action. Accordingly, plaintiff is unable to satisfy the second prong of the *DeGrace,* standard.

In light of the foregoing, plaintiff has not established a genuine dispute concerning whether the Hospital took immediate and appropriate action once it became aware of Morgan's claims of harassment. Rather than ignoring plaintiff's complaints or acquiescing in any sexually hostile conduct, the Hospital initiated a course of action which, had it been allowed to proceed, may have culminated in a mutually agreeable resolution of the problem.

## II. THE MOTION TO DISMISS

The Hospital has also moved to have this action dismissed because of plaintiff's repeated failure to obey court orders. This motion presents an additional meritorious basis on which the Hospital is entitled to prevail in this action.

### A. *The Facts*
1. Morgan's Failures to Timely and Properly Respond to Written Interrogatories and Orders of This Court.

On April 22, 1986, the Hospital served on Mr. Morgan Written Interrogatories. Pursuant to Rule 33 of the Local Rules for the United States District Court for the District of Massachusetts (the "Local Rules") responses were due on or about May 22, 1986. Robert C. Johnson, Jr., counsel for Mr. Morgan filed no responses and sought no extension.

By letter dated May 27, 1986, the Hospital's counsel asked Mr. Morgan to file his responses within the week. Mr. Johnson reached an agreement with the Hospital for an extension to June 11. It is unclear, however, whether this extension pertained to the interrogatories due in May, or responses to an additional request due on June 3. In any event Morgan's responses to defendant's First Set of Interrogatories were received on June 12, 1986.

The Hospital's interrogatories went to the heart of plaintiff's allegations concerning the alleged sexual harassment. Defendant claims that the responses were woefully inadequate.[3] Morgan claims his responses were given to the best of his ability. On June 26, 1986, counsel for the Hospital wrote to Mr. Morgan's counsel and asked him to supplement the response. He did not respond until July 17, 1986. The supplemental responses which Mr. Morgan filed on August 4, 1986 were also, in defendant's view, inadequate. The Hospital filed a Motion to Compel on August 6, 1986. Rule 17 of the Local Rules of the Federal District Court for the District of Massachusetts ("the Local Rules") required that the plaintiff respond to the motion within fourteen days. Mr. Johnson ignored the Motion to Compel, making no response at all.

On September 9, 1986, this Court allowed the Hospital's Motion to Compel in its entirety and directed the plaintiff to respond fully by October 9, 1986. Mr. Morgan failed to serve further answers on October 9 as ordered. Nor did he seek an extension of the time to comply with the Court's Order before October 9.

On October 10, 1986, after Mr. Morgan had failed to comply with the Court's Order, counsel for the Hospital wrote Mr. Morgan's counsel and requested that he comply with the Court's Order by October 14, 1986. On October 14, 1986, Mr. Johnson left a message for the Hospital's counsel, stating that responses would be re-

---

**3.** For example, Interrogatory 3 asked: Please specify each fact and identify each document upon which Morgan relies in alleging in Paragraph 7 of his Complaint that "[s]oon after this co-worker came to work in plaintiff's depart-ment he began to sexually harass plaintiff," describing how the co-worker allegedly sexually harassed Morgan and when and where the harassment took place.

Ans. I was sexually harassed at work.

ceived in the mail on the morning of Friday, October 17, 1986. That did not happen and, on October 17, 1986 the Hospital filed a Motion to Dismiss pursuant to Rule 37(b)(2)(C).

On October 29, 1986, Mr. Johnson filed an objection to the Hospital's Motion to Dismiss, and a Motion to Enlarge the Time for Filing Further Answers as ordered on September 9 until November 3, 1986. The Hospital filed its opposition to that motion.

Notwithstanding the Court's Order, and Mr. Johnson's own motion requesting an extension until November 3, Mr. Morgan filed no further responses until November 4, 1986, twenty-five days after the Court ordered due date. Mr. Johnson claims that the fact that responses were eventually filed after a motion to enlarge time demonstrates plaintiff's good faith.

The Court had ordered on September 9, that "plaintiff shall fully respond within 30 days ..." with further answers to Interrogatories 2, 4–6, 11–13, 15–21, 23–33. Mr. Morgan's responses were still, in defendant's view, utterly inadequate and in disregard of the Court's order. For example Interrogatory 24 asked:

Please specify each fact and identify each document upon which Morgan relies in Paragraph 33 of his Complaint that "[t]he unlawful employment practices of the Defendants have deprived the Plaintiff of the same right to employment opportunities as is enjoyed by white males" and describe any instance when a white employee of the Hospital who struck another employee has been treated differently than Morgan.

Mr. Morgan's original answer was:

This information is in the possession of the Hospital.

His supplemental answer stated:

I have answered the question sufficiently.

In response to the Court's order compelling further answers, Mr. Morgan stated:

This information is in the possession of the Hospital. I do not have this information in my possession at the present time.

Mr. Morgan repeated this pattern of responses to additional interrogatories. Even though the interrogatories dealt with the critical issues of the case, such as the alleged racial and sexual discriminatory practices of the Hospital, and even though the Court had ordered a fuller response, Mr. Morgan merely repeated the non-responsive answers he had given before the Court compelled a fuller response. *See* Appendix A of Defendant's Brief on Dismissal for a recitation of some of Mr. Morgan's evasive answers.

As a result of Mr. Morgan's inadequate responses, the Hospital filed a Second Motion to Dismiss on November 10, 1986. After a hearing on that motion on May 12, 1987, the Court indicated that Mr. Morgan might be precluded at trial from introducing evidence on those points which he failed to file further answers and awarded the Hospital attorney's fees incurred in connection with its motion.[4] In addition, the Court set up a briefing schedule for defendant's summary judgment motion.

2. Morgan's Failure to Produce Documents in a Timely Fashion.

On April 22, 1986, the Hospital filed a Request for Production of Documents. Pursuant to Local Rule 24, responses were due on or about May 22, 1986. The plaintiff failed to timely file a response. Nor did he request an extension of time to respond. Defendant claims that only when the Hospital filed a motion to compel, did the plaintiff file a response on or about June 13, 1986. Mr. Johnson claims that the Hospital agreed to an extension to June 11, and that he mailed a response to the production request on June 12, only one day late.

The Hospital claims that all documents were not delivered. The Hospital made several oral requests that Mr. Morgan produce the documents. He failed to do so. On June 26, 1986, the Hospital made a written demand that the documents be produced. He failed to do so. On August 14, 1986, the Hospital made another written request that Mr. Morgan produce the doc-

**4.** The attorneys' fees were assessed in the amount of $400.

uments. He failed to do so. On August 29, 1986, the Hospital made a third written request that the documents be produced. Not until September 5, 1986, did Mr. Morgan finally produce the documents.

### 3. Morgan's Failure to Timely Claim a Jury Trial And Violation of Order Requiring Affidavit.

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the deadline for filing a jury demand expired May 5, 1986 and, by failing to timely file, Mr. Morgan had waived his jury right. *See* Fed.R.Civ. P. 38(d). On June 27, 1986, Mr. Morgan filed a demand for a jury trial. If he wished to present his case to a jury, Mr. Morgan was obligated to file a motion for leave to file his jury claim late. *Scharnhorst v. Independent School District*, 686 F.2d 637 (8th Cir.1982); *cert. denied*, 462 U.S. 1109, 103 S.Ct. 2459, 77 L.Ed.2d 1337 (1983); *see also* 9 C. Wright and A. Miller, Federal Practice and Procedure § 2321, at 102 (1971). He simply did not do so.

On July 18, 1986, the Hospital moved to strike the jury demand. Pursuant to Local Rule 17(a)(2), a response to the Hospital's Motion was due on or about August 1, 1986. Mr. Johnson failed to timely file a response. He belatedly moved on August 11, 1986, for leave to file his jury demand late and an opposition to the Hospital's motion.

At the hearing on May 12, 1987, Mr. Johnson asserted to the Court that some unspecified action by the Hospital's counsel had caused him to believe that the Hospital had no objection to a late jury demand. The Court ordered Mr. Johnson to state the basis for his assertion, by affidavit or other document, by August 28, 1987.

Mr. Morgan's counsel never submitted an affidavit or other document to support the claims he had made. In his response to the pending motion to dismiss, Mr. Johnson claimed that he did not demand a jury trial as required by the Rules because of defendant's counsel's statement that he would not oppose such a demand in the future. Thus, although Mr. Johnson did not submit the required affidavit by August 28, 1987,

he still maintains Mr. Morgan has a right to a jury trial.

### 4. Failure to Attend Deposition.

On January 28, 1987, Mr. Morgan's attorney notified counsel for the Hospital that his trial schedule prevented his attendance at the deposition of Mr. Morgan scheduled by the Hospital for the following day. The Hospital offered to conduct the deposition on any day before February 1, 1987 the date by which the Court had ordered discovery completed. In the alternative, the Hospital offered to conduct the deposition on a day after January 31, if Mr. Johnson obtained permission from the Court that the deposition be conducted after the date by which discovery was to be completed. Without seeking a protective order, Mr. Johnson and Mr. Morgan simply failed to attend the deposition and the Hospital again filed a motion to dismiss. That motion resulted in an order by the court at the pretrial conference on March 26, 1987, compelling Mr. Morgan's attendance at a rescheduled deposition.

### 5. Morgan's Failure To Attend And Prosecute His Own Motion at a Magistrate's Hearing.

On March 24, 1987, Mr. Morgan filed a motion to compel the production of certain "documents" even though the Hospital had filed its response objecting to the plaintiff's requests some six months earlier on September 2, 1987. The period for discovery had closed on January 31, 1987. Yet, it was not until the time of the March, 1987 pretrial conference that the plaintiff presented his objections to the Court as to the Hospital's position. Notwithstanding its valid objection that the requests were overly broad and were not requests for documents but for information which might be derived from documents, the Hospital offered to allow Mr. Morgan access to the documents from which the information could be derived pursuant to Rule 33(c). That was unacceptable to the plaintiff. The plaintiff filed a Motion to Compel. The motion was devoid of any legal authority. In response to the motion, the Hospital filed a memorandum in opposition. The plaintiff failed to file a memorandum in

opposition, as required by Local Rule 17(a)(3).

On June 16, 1987, the Magistrate held a hearing on Mr. Morgan's motion. Mr. Morgan's attorney failed to appear at that hearing. Mr. Morgan's attorney claims that he never received notice of the hearing. *See* Aff. of Robert C. Johnson, July 22, 1987, ¶ 1. At that hearing, the Magistrate ratified the Hospital's offer to allow Mr. Morgan's counsel to review the documents. The Magistrate gave the plaintiff a ten day period in which to exercise that option.

After the Magistrate issued her ruling, Mr. Johnson neither sought to review the documents nor sought a rehearing of the Magistrate's decision. As a result, the Hospital filed a motion for sanctions. In fact, even after the Hospital filed its motion for sanctions, Mr. Johnson failed to request a rehearing. The Hospital argues that his lackadaisical approach to this issue belies any claim that the motion was brought for any purpose other than to harass the Hospital. In addition, the Hospital argues that the failure of counsel to ask for a rehearing also calls into question his claim that he did not attend the hearing on June 16 because he did not receive notice of the hearing.

6. Morgan's Failure to Cooperate as Directed by the Court.

On May 12, 1987, this Court held a hearing. The Court directed counsel for the Hospital to prepare a draft order memorializing the court's oral orders and send it for review to the plaintiff's counsel, in part to assure that Mr. Johnson would have a clear understanding of his obligations. Counsel for the Hospital sent a copy of the draft

order to Mr. Johnson on May 20, 1987 for his comments. Mr. Johnson failed to respond. On June 5, 1987, counsel for the Hospital sent a second letter to Mr. Johnson asking for his comments on the draft order. Mr. Johnson made no response.

7. Morgan's Violation of a Pretrial Order and Local Rule 17.

At the May 12, 1987 hearing, the Court also directed the Hospital to file its summary judgment motion and supporting papers by August 28, 1987, and ordered Mr. Morgan to file his response by September 11, 1987.

On August 21, 1987, the Hospital filed its motion, and memorandum and supporting affidavits.

Mr. Morgan did not respond to the motion for summary judgment. Even if the Court had not set a briefing schedule, Local Rule 17(a)(2) required Mr. Morgan to respond on or before September 4, 1987. He did absolutely nothing.

On November 13, 1987, a hearing on the Hospital's motion for summary judgment and other matters was scheduled for November 25, 1987. On November 19, 1987, Mr. Johnson belatedly moved for leave to file late an opposition to the summary judgment motion. He requested seven days in which to file his opposition. The scheduled hearing was postponed.

On March 15, 1988, this court held another hearing in which plaintiff was ordered to respond to the summary judgment motion and to defendant's motion to dismiss by April 15, 1988. Defendant was ordered to brief its motion to dismiss by April 1, 1988.

On April 1, defendant filed his memorandum of law, seeking dismissal pursuant to Fed.R.Civ.P. 16, 37 and 41.[5] On April 15,

---

5. Fed.R.Civ.P. 16(f) states:

> If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others

any of the orders provided in Rule 37(b)(2)(B), (C), (D)....
Fed.R.Civ.P. 37(b)(2)(C) states:

> If a party or an officer, director, or managing agent of a party ... fails to obey an order to provide or permit discovery, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding of any

1988, Mr. Morgan filed his opposition to dismissal and summary judgment. No legal memorandum in opposition to the motion for summary judgment and no affidavit challenging any of the factual averments relied on by the Hospital were filed.

In his opposition to dismissal, Mr. Morgan argues that the $400 sanction already ordered is sufficient since plaintiff's failures were not willful. Moreover, Morgan argues that there are effective sanctions available other than dismissal. In addition, Mr. Morgan's counsel, Mr. Johnson, asserts that Morgan himself has no personal responsibility for the alleged failures. Moreover, Mr. Morgan claims there is no prejudice to the Hospital because they have already been paid $400 for costs incurred in compelling answers to interrogatories. Finally, Mr. Morgan asserts that the Hospital is also to blame because of its improper failure to produce documents plaintiff requested.

In its Reply Memo on Dismissal, the Hospital agreed that it filed an objection to plaintiff's document request on September 2, 1986. Plaintiff did not, however, file a motion to compel until March 24, 1987, almost 6 months later.

Moreover, the Hospital gave plaintiff a detailed explanation of how the Hospital personnel records are maintained, and offered, upon the entry of a confidentiality order, to permit plaintiff to review all the personnel files. Mr. Johnson never responded to the offer, and then filed a motion to compel. Morgan then missed the scheduled hearing on its motion before the Magistrate.

### B. *Discussion*

1. Counsel's Misconduct Was Wilful.

█ Mr. Johnson's conduct as Mr. Morgan's attorney in this case reflects a persistent pattern of disregarding or disobeying the requirements of the Federal Rules of Civil Procedure, the Local Rules of the

Federal District Court for the District of Massachusetts, and explicit court orders. Thus, the court is compelled to conclude that Mr. Johnson's misconduct was willful. While the court recognizes that attorneys may at times have conflicting obligations, there are proper means for seeking extensions of time and rescheduling events. A timely motion for modification of a court ordered deadline is an obvious example. In this case, however, Mr. Johnson did not utilize such established, proper means for requesting relief from the requirements of the relevant Rules and court orders. Rather, he simply arrogated to himself control of the progress of this case. Mr. Johnson's repeated failure to meet his obligations was not due to an inability to do so. It was due to a deliberate indifference to his obligation to conform to the relevant Rules and to obey court orders.

2. Dismissal Because of Counsel's Misconduct Is Permissible and Appropriate.

Fed.R.Civ.P. 37(b)(2)(C) provides that a court may issue just and appropriate sanctions for failure to comply with a discovery order, including dismissal of an action. Fed.R.Civ.P. 16(f) authorizes dismissal if a party fails to obey a scheduling order. F.R.Civ.P. 41(b) permits dismissal if a plaintiff fails to prosecute his case. Each of these Rules individually, and all of them collectively, indicate that dismissal because of counsel's misconduct is warranted in this case.

█ With regard to Rules 16 and 37, the court recognizes that dismissal is not appropriate "when it has been established that failure to comply has been due to inability, and not to wilfullness, bad faith, or any fault of the petitioner." *National Hockey League v. Metropolitan Hockey League,* 427 U.S. 639, 640, 96 S.Ct. 2778, 2779, 49 L.Ed.2d 747 (1976) (quoting *Society Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255

part thereof, or rendering a judgment by default against the disobedient party.
Fed.R.Civ.P. 41(b) states:
For failure of the plaintiff to prosecute or to comply with these rules or any order of the

court, a defendant may move for dismissal of an action or of any claim against defendant. . . .

(1958)); *see also Farm Construction Services, Inc. v. Fudge*, 831 F.2d 18, 20 (1st Cir.1987). In this case, however, counsel's failure to meet his obligations was willful, rather than due to an inability to comply.

The court also recognizes that dismissal is a severe sanction. However, "there is nothing in [Rule 37(b)(2)] that states or suggests that the sanction of dismissal can be used only after all the other sanctions have been considered or tried." *Damiani v. Rhode Island Hospital Corp.*, 704 F.2d 12, 15 (1st Cir.1983). To the contrary, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Id., quoting National Hockey League*, 427 U.S. at 642–43, 96 S.Ct. at 2780–81.

The factors of specific and general deterrence warrant dismissal as the sanction for counsel's misconduct in this case. Counsel's repeated misconduct, continuing even after the imposition of monetary sanctions, reflects a callous indifference to the obligations assumed by filing an appearance in federal court.[6] Hopefully, this decision will deliver a message to Mr. Johnson which this court's admonitions and monetary sanctions evidently failed to convey.

Similarly, the court hopes this opinion will remind other counsel who may be tempted to disregard the requirements of Rules or to disregard court scheduling orders, that to do so is risky business. This court must manage a calendar of about four hundred civil cases. The efficient progress of the court's calendar, and informed and considered judgments in particular matters, depend on reliable schedules and the timely filing of required documents. Sanctions of appropriate severity will be imposed where necessary to remind counsel of the importance of conforming to the Rules and obeying court orders.

Plaintiff's counsel has suggested that it is inappropriate to dismiss this case and thus punish plaintiff for counsel's conduct. This, however, is the rare case in which dismissal as a sanction does not deprive a plaintiff of an opportunity to present the merits of his case which he otherwise would have because the court has already determined that defendant's motion for summary judgment should be granted. Dismissal is merely a second reason for terminating this action in favor of the defendant. In any event:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney." *Smith v. Ayer*, 101 U.S. 320, 326, 25 L.Ed. 955.

*Damiani*, 704 F.2d at 16, *quoting Link v. Wabash*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962); *See also, Farm Construction Services, Inc.*, 831 F.2d at 21; *Corchado v. Puerto Rico Marine Management, Inc.*, 665 F.2d 410, 413 (1st Cir.1981), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982).

The propriety of imposing the sanction of dismissal for counsel's conduct in this case is confirmed by a comparison of this matter with recent cases in which the Court of Appeals for the First Circuit has affirmed the use of dismissal as a sanction for violation of the discovery rules and related

---

**6.** This indifference apparently persisted at least until August 22, 1988, the date of the hearing on the motions for summary judgment and dismissal. The hearing had been scheduled for at least six weeks, after having been postponed at Mr. Johnson's request. At mid-day on August 22, 1988, Mr. Johnson contacted this court's clerk to request a postponement because he was on trial before a Magistrate. This request, which was denied, could and should have been made much earlier, before defendant's counsel and the court had prepared for the August 22, 1988 hearing.

court orders. Mr. Johnson's misconduct in this case is more egregious than the behavior previously found to justify dismissal. *See, Spiller v. U.S. Laboratories,* 842 F.2d 535, 537 (1st Cir.1988) ("on at least three different occasions, the plaintiff ignored court orders without justification or explanation."); *Damiani,* 704 F.2d at 16, ("Not only was there wilful disobedience of [one court discovery] order, but the plaintiff's attorney arrogated control of discovery to himself and changed the date of compliance."); *Ganapolsky v. Keltron,* 823 F.2d 700 (1st Cir.1987) (failure to respond to a single order to provide more detailed answers to interrogatories, after being warned of possible dismissal, warranted dismissal.).

The Court of Appeals for the First Circuit has also suggested that F.R.Civ.P. 41(b) provides an alternative grounds for the dismissal of this case. In *Corchado* plaintiff's two attorneys missed several discovery deadlines concerning interrogatories. One of the two attorneys failed to attend a pretrial conference. These failures prompted the district court to dismiss the case. The Court of Appeals affirmed, approving of the trial court's characterization of the attorneys' behavior as "flagrant bad faith, . . . dilatory tactics" and "a pattern of reprehensible conduct that merits the harsh penalty of dismissal." *Id.* at 413. In addition, the Court of Appeals held that such behavior provided two grounds for dismissal. As the court stated:

> The conduct of the plaintiff's attorneys in this case brings it within the ambit of both F.R.C.P. 37(B)(2)(C) (dismissal for failure to respond to discovery) and F.R.C.P. 41(b) (dismissal for failure to prosecute).

*Id.* at 413. This conclusion is equally applicable in this case.

Thus, for the foregoing reasons, the Hospital's motion to dismiss will be allowed.[7]

## III. CONCLUSION AND ORDER

In view of the foregoing, defendant's motion for summary judgment must be allowed. Plaintiff has offered insufficient evidence to raise a genuine issue whether defendant's articulated reason for his discharge is a pretext for race discrimination. Similarly, to the extent plaintiff can show he opposed conduct made unlawful by Title VII, once again he is unable to put in genuine dispute the question whether defendant's articulated reason for firing him was a pretext for a true retaliatory motive. Plaintiff does not appear to be pressing his claims regarding promotions but, in any event, there currently is insufficient evidence to support such claims. Finally, the harassment complained of by plaintiff was not adequately severe or pervasive to warrant a trial on his sexual harassment charge, and there is insufficient evidence that the Hospital was aware of such harassment but failed to take prompt and appropriate corrective action. Accordingly, defendant's motion for summary judgment is hereby ALLOWED.

In addition, for the reasons stated previously, defendants motion to dismiss is also hereby ALLOWED.

Accordingly, judgment shall enter for the defendant.

---

**7.** Although an award of reasonable attorneys fees in connection with the motion to dismiss, as requested by the defendant, would also be permissible in the circumstances of this case, the court has decided that in view of the imposition of the sanction of dismissal and other factors, this further sanction is not necessary or appropriate.