Juan CORCHADO, Plaintiff-Appellant,

v.

PUERTO RICO MARINE MANAGE-MENT, INC., Defendant-Appellee.

Nos. 81–1183, 81–1204, 81–1256, 81–1259, 81–1260, 81–1286 and 81–1335.

United States Court of Appeals, First Circuit.

Argued Nov. 2, 1981.

Decided Dec. 8, 1981.

Rehearing Denied Jan. 15, 1982.
Rehearing In Banc Denied Feb. 1, 1982.

Harry A. Ezratty, San Juan, P.R., for appellant.

Herbert W. Brown, III, San Juan, P.R., with whom Law Offices of Jimenez & Fuste, San Juan, P. R., was on brief, for appellee.

Before CAMPBELL, BOWNES, and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

The issue on appeal is whether the district court abused its discretion in dismiss-

ing this case for failure to comply with discovery orders and failure of plaintiff's counsel to attend a pretrial conference. We affirm the dismissal.

Plaintiff-appellant, Juan Corchado, is a merchant seaman who allegedly incurred two knee injuries while aboard one of defendant-appellee's vessels, the SS Fortaleza. Corchado retained Attorney Bernard Rolnick, a New York lawyer, to represent him. Rolnick referred the case to Wilfredo Geigel, a Puerto Rican attorney who brought a complaint which was filed in the District Court of Puerto Rico on March 31, 1980.[1] Summons was issued on the same day, but service of process was not made until June 22, 1980.[2] A timely answer was filed on July 7, 1980, and, at the same time, interrogatories, a request for production of documents and a notice of the taking of plaintiff's deposition on August 5, 1980, were sent to Attorney Geigel. The date of the deposition was changed by agreement of counsel to August 13, 1980. When the plaintiff arrived for his deposition, he was accompanied not only by Attorney Geigel, but also by another attorney, Harry Ezratty. Ezratty stated at the outset of the deposition: "Let me, at this time, for the record, state that I am co-counsel with Wilfredo Geigel. I have not filed a formal appearance but I will be filing one shortly. But, for the record, I am co-counsel."

In plaintiff's brief, which is signed only by Ezratty,[3] he describe his role in the case as follows:

Sometime thereafter [after suit was filed by Attorney Geigel], CORCHADO contacted Harry A. Ezratty, also of the Puerto Rico bar requesting that Ezratty assume representation of the case. CORCHADO said he would dismiss both Geigel and Rolnick as counsel. Since Ezratty had at one time been Rolnick's partner and had been closely associated with Geigel, he declined. Some months later,

on CORCHADO's insistence, Ezratty agreed with Rolnick and Geigel to serve, without fee and merely as a consultant, to handle the technical aspects of the case involving ship's maneuvers and medical damages. In this connection, Ezratty obtained the services of an expert in ship's handling and presented CORCHADO to a physician who would act for the plaintiff as an expert Orthopod.

Part of the agreement made between counsel was that Ezratty would not try the case and he would be notified of all matters in the case by Geigel. Copies of all documents would be sent to him so that he would be made aware of the proceedings in the case. Unfortunately, this was not done in all instances. While Ezratty was notified of CORCHADO's deposition and did in fact attend and worked on several interrogatories and discovery documents with Geigel, Ezratty was not notified of due dates of answers to interrogatories, pretrial conferences, the trial date and a deposition Geigel took of CORCHADO's shipmate who was present at one accident.

At CORCHADO's deposition, Ezratty stated he was "co-counsel", he did not however at any time file a Notice of Appearance with the District Court; Ezratty did not receive any notices from the District Court as to any of the dates or deadlines or the setting of any conferences. Ezratty performed no other work than act as consultant, until he prepared a set of interrogatories, immediately prior to dismissal of this case. Geigel did not place Ezratty's name on any pleadings or motions, nor was he authorized to do so.

During the month of December, Ezratty discovered that Geigel was leaving Puerto Rico on holiday. Ezratty volunteered to prepare and file answers to defendant's interrogatories. At that time Ezratty was not notified by Geigel that CORCHADO was under Court order

---

1. The complaint is dated February 29, 1980.

2. No reason is given for the delay in service of process.

3. There are three separate notices of appeal: one filed and signed by Attorney Ezratty, one filed by Attorneys Rolnick and Rodriguez Masso and signed by Rodriguez, and one filed and signed by Rolnick.

to file interrogatories by a certain date. Ignorant of this fact, Ezratty prepared the interrogatories and while doing so was informed by PRMMI's counsel of the Court's order. It was already passed [sic] the deadline. Ezratty filed the answers to interrogatories as quickly as possible. PRMMI's counsel knew they had been prepared and that Ezratty would personally deliver them, since Ezratty's office is engaged in a great deal of litigation with defendant's counsel and would be in his office on other matters. Ezratty was also informed of the pretrial conference by PRMMI's counsel.

In the interim, Ezratty attempted to contact Geigel on his return to Puerto Rico to discuss the pre-trial order and its contents. He was never able to get Geigel at his office. Although Ezratty left many messages, Geigel never returned the calls.

On the eve of the pre-trial, knowing that no pre-trial order had ever been prepared, (this knowledge was received from counsel for PRMMI), Ezratty called Rolnick directly in New York, since Geigel remained unavailable. Rolnick then agreed that new counsel should enter the case especially since Mr. CORCHADO was pressuring both Rolnick and Ezratty for this. The next day, Geigel appeared at the pretrial conference alone and notified the Magistrate of this. Geigel did not know that interrogatories had already been prepared and were ready.

What ever the reasons for Ezratty's half-in, half-out appearance in this case, it is clear that from the date of plaintiff's deposition there was not only a lack of communications between him and Geigel, but that neither of them assumed the responsibility for responding to discovery requests and orders.

There was a status conference before the magistrate on November 20, 1980, attended by Geigel and the attorney for the defendant at which a discovery schedule was set and a pretrial conference scheduled for January 23, 1981. An order of the court affirming the date of the pretrial conference and specifying what would be required at the conference was issued on November 25, 1980. A pretrial order form was sent to the attorneys with instructions that it be completed and filed seven days prior to the conference. Plaintiff's attorneys failed to comply with the order in any respect.

We can understand plaintiff's claim that the failure to be examined by defendant's doctor was not his fault because he appeared three times at the doctor's office but was told that the doctor was too busy to examine him each time. If that were the only discovery dereliction, we would be constrained to be charitable, but it is the only one for which plaintiff offers any kind of reasonable excuse.

On December 15, 1980, the court ordered a status conference before Judge Gierbolini on February 11, 1981, and a trial date of February 17 was fixed. In response to defendant's motion of December 8, 1980, to compel answers to interrogatories and for sanctions, the magistrate on December 15, 1980, ordered: "The outstanding discovery shall be answered by December 17, 1980, or sanctions may follow." Plaintiff failed to respond. On December 23, 1980, defendant moved again for sanctions. This motion states that defendant's attorney telephoned plaintiff's counsel on December 18 and was assured that there would be a discovery response by December 22, 1980. Attorney Geigel responded to this motion on December 29 by asking for an additional fifteen days to answer the interrogatories. The answers, however, were not filed within the fifteen-day period. On January 23, 1981, Attorney Geigel appeared at the pretrial conference before the magistrate and filed a motion to withdraw as plaintiff's counsel, giving as the reason that plaintiff had requested him to do so. Attorney Ezratty did not appear at the pretrial conference, although it is clear from his statement in plaintiff's brief that he was informed of it and knew that Geigel's only purpose in attending was to ask to withdraw as plaintiff's counsel. In granting the motion on January 26, the magistrate noted: "The record reflects plaintiff will remain repre-

sented by co-counsel Harry Ezratty. See his appearance at plaintiff's deposition of 8–13–80."

On January 26, 1981, defendant filed another motion for sanctions. On the same date, the magistrate issued a pretrial conference memorandum and a recommendation that plaintiff's complaint be dismissed. The memorandum recited plaintiff's failure to meet discovery orders. It also noted that counsel for defendant stated that he had on several occasions attempted to meet with Attorney Ezratty and to have Ezratty appear at the pretrial conference of January 23.

On February 2, Geigel, although no longer counsel in the case, filed an attempted explanation of why the discovery schedule was not met, the essence of which is a failure of communications between himself and Ezratty. On February 11, 1981, the district court, after reciting the sorry history of the case, dismissed the complaint. The court denied the plaintiff's motion for reconsideration on April 13, 1981. Part of its order bears repeating:

> A close scrutiny of the full record of this case shows a clear case of flagrant bad faith on the part of plaintiff that has unnecessarily delayed these proceedings. These dilatory tactics by two attorneys retained by plaintiff, as stated in our Order of February 11, 1981, cannot be approved since they show a pattern of reprehensible conduct that merits the harsh penalty of dismissal. The deterrent effect of this discretionary action on attorneys in a district with traditional and chronic procrastination, cannot be overlooked.

■ The conduct of the plaintiff's attorneys in this case brings it within the ambit of both Federal Rule of Civil Procedure 37(b)(2)(C) (dismissal for failure to respond to discovery) and Federal Rule of Civil Procedure 41(b) (dismissal for failure to prosecute). The standard or review is the same for both, abuse of discretion. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (Rule 41(b) dismissal); *National Hockey League v. Metro-politan Hockey Club*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (dismissal under Fed.R.Civ.P. 37(b)(2)(C).

■ We find no abuse of discretion. The district court was faced not only with a persistent failure to respond to discovery, but with the anomalous situation of the plaintiff's attorney coming to a pretrial conference without the counsel who was to replace him for the sole purpose of withdrawing from the case, and this, after a trial date had been set. We hope that we have made it clear by now that a district court's discretion to use the extreme sanction of dismissal for failure of counsel to respond properly to discovery orders or to fail to appear at scheduled conferences or hearings will be upheld unless abused. *See Zavala Santiago v. Gonzalez Rivera*, 553 F.2d 710 (1st Cir. 1977); *Pease v. Peters*, 550 F.2d 698 (1st Cir. 1977); *Affanato v. Merrill Brothers*, 547 F.2d 138 (1st Cir. 1977); *Local Union No. 251 v. Town Line Sand & Gravel, Inc.*, 511 F.2d 1198 (1st Cir. 1975).

We realize that we are visiting the sins of the attorneys upon the client, but this is an unavoidable side effect of the adversary system. We must note in this connection that however good the intentions of Attorney Ezratty were, the plaintiff was the victim of Ezratty's decision to play only a selective role in the case. Nor can we understand Attorney Geigel's last minute withdrawal without making sure that Attorney Ezratty took over the case and was brought up to date on all aspects of it.

■ Plaintiff has argued that a hearing should have been held before the sanction of dismissal was imposed. In *Link v. Wabash Railroad Co.*, 370 U.S. at 633, 82 S.Ct. at 1390, the Supreme Court explicitly held:

> Accordingly, when circumstances make such action appropriate, a District Court may dismiss a complaint for failure to prosecute even without affording notice of its intention to do so or providing an adversary hearing before acting. Whether such an order can stand on appeal depends not on power but on whether it

was within the permissible range of the court's discretion.

(footnote omitted). Under the circumstances of this case, no hearing was necessary.

We find no merit in the argument that plaintiff as a seaman is a ward of the court and, therefore, deserves special treatment.[4]

*Affirmed.*

---

**4.** Plaintiff cites two cases in support of this contention, neither of which is apposite to his argument and both of which lend weight to our holding in this case. In *Kenney v. California Tanker Co.*, 381 F.2d 775 (3d Cir. 1967), the court upheld a dismissal of a libel in admiralty for libelant's failure to take any action in the case for one year. In *Torino v. Texaco, Inc.*, 378 F.2d 268 (3d Cir. 1967), the court affirmed the dismissal of a seaman's action for failure of plaintiff to appear at trial.