MAKRO (SAMOA), INCORPORATED, dba METRO
ENTERPRISES, an American Samoa Corporation, CHEN KUO
YEN aka TONY CHEN, and CHEN WU MAN CHU aka
CHRISTINE CHEN, Plaintiffs,

v.

PROGRESSIVE INSURANCE COMPANY (PAGO PAGO) LTD.,
an American Samoa Corporation,
and DOES 1 THROUGH 10, inclusive, Defendants.

PROGRESSIVE INSURANCE COMPANY (PAGO PAGO) LTD.,
Third Party Plaintiff,

v.

MARK SOLOFA PACIFIC INSURANCE & FINANCE, INC.,
MARK SOLOFA, MARK JASON SOLOFA, NADINE
SOLOFA-TAUFA`ASAU, individually and as employees of
MARK SOLOFA PACIFIC INSURANCE & FINANCE, INC., and
MARK SOLOFA INC., Third Party Defendants.

High Court of American Samoa
Trial Division

CA No. 56-99

October 25, 2004

113

Before KRUSE, Chief Justice, ATIULAGI, Associate Judge, and MAMEA, Associate Judge.

Counsel: For Plaintiffs, Paul F. Miller and Robert K. Maez
For Defendants/Third Party Plaintiffs, Roy J.D. Hall, Jr.
For Third-Party Defendants, David P. Vargas

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

On August 12, 2004, Defendant Progressive Insurance Company (Pago Pago) Ltd. ("Progressive") filed a motion to dismiss on the grounds that Plaintiff ("Makro") had failed to comply with a court order, as provided by T.C.R.C.P. 37(b)(2)(C). On August 31, 2004, third party Defendant Mark Solofa Pacific Insurance and Finance Inc. ("Solofa") joined in Progressive's motion and filed a motion to dismiss of its own, as

provided by T.C.R.C.P. 41(b), for failure to prosecute. On September 27, 2004, this Court held a hearing on both motions. For the reasons stated below, we grant Defendants' motions to dismiss.

## Relevant Facts

Makro filed this action on June 10, 1999. On September 29, 1999, Progressive propounded its first set of interrogatories. On July 24, 2001, nearly two years later, Makro produced a 400-page report by accountant Mark Hunsaker ("Hunsaker report"), which was relevant to answering the interrogatories, but not in direct response to them.

On September 2, 2003--nearly four years after it propounded its first set of interrogatories--Progressive was forced to file a motion to compel because Makro continued in its failure to provide adequate responses. However, Progressive withdrew its motion after Makro promised to submit the responses within thirty days.

On December 5, 2003, over four years after the first set of interrogatories were propounded and over three months after Progressive filed and then withdrew its motion to compel, Makro finally submitted a response. Makro alleges that the three year delay was caused by a previous attorney, who would not hand over the case file to Makro's then current attorney. Nonetheless, Makro's response was less than comprehensive. In fact, in its response to most of the substantive interrogatories, Makro simply incorporated by reference the lengthy Hunsaker report.

On April 15, 2004, Progressive propounded its third set of interrogatories. On May 19, 2004, Makro responded to those interrogatories. However, its response was, again, inadequate, and on May 21, 2004, Progressive again filed a motion to compel. On June 14, 2004, this court held a hearing on that motion and Makro's counsel, without explanation, failed to attend the hearing.

On June 17, 2004, this Court granted Progressive's motion to compel, holding that Makro's response to the interrogatories was evasive. In granting the motion, this Court ordered Makro to answer Progressive's third set of interrogatories within 30 days. On August 12, 2004, nearly two months after this court granted the motion to compel, Makro had yet to comply with that motion, and Progressive moved to dismiss the case alleging that Makro failed to comply with a court order.

On September 27, 2004, just shy of five years after Progressive propounded its first set of interrogatories, this Court held a hearing on Progressive's present motion to dismiss. Unlike the previous hearing, Makro's counsel actually attended this hearing, but in doing so only rehashed the same arguments that this Court had rejected in granting

Progressive's motion to compel, two months earlier. At the hearing, Makro's counsel, citing to his client's inability to further respond because of its principals' deficiency in the English language and matters of accountancy,[1] essentially indicated that Makro had no further intention to address Progressive's discovery requests and, it seems, to comply with this Court's order to compel.

## Discussion

A court may properly dismiss a case if a party fails to comply with a discovery order. T.C.R.C.P. 37(b)(2)(C).[2] The imposition of dismissal as a discovery sanction must be based on willfulness, bad faith or fault on the part of the nonmoving party. *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 640 (1976).

A party who repeatedly fails to comply with discovery requests and court orders is acting willfully and in bad faith. *See Montgomery v. Pepsi-Cola Gen. Bottlers, Inc.*, 2004 WL 2091483 at *5 (holding that party's actions were willful and in bad faith when party provided inadequate responses to interrogatories and failed to correct those inadequacies after repeated requests by the court and opposition); *Fox v. Studebaker-Worthington, Inc.*, 516 F.3d 989, 994 (8th Cir. 1975) (holding that dismissal was proper where party showed a "cavalier disregard for the carefully constructed system provided by the Federal Rules of Civil Procedure . . . [thus] blunt[ing] defendants' attempts to prepare the case for trial").

More specifically, when a party responds to interrogatories, that party "may not avoid answers by imposing on the interrogating party a mass of business records from which the answers cannot be ascertained by a person unfamiliar with them." *In re G-I Holdings Inc.*, 218 F.R.D. 428, 438 (D.N.J. 2003).

Further, a party who fails to appear at a scheduled hearing may be acting willfully and in bad faith such that a 37(b)(2)(C) dismissal is proper. *Corchado v. P.R. Marine Management*, 665 F.2d 410, 413 (1st Cir. 1981) ("We hope that we have made it clear by now that a district court's discretion to use the extreme sanction of dismissal for failure of

---

[1] The submission belies common sense. How then does Makro, an on-island retail business presumably sophisticated in the business realm of inventory and accounting matters, anticipate itemizing and proving up its damages?

[2] Because this Court finds adequate grounds for dismissal in Defendant Progressive's Rule 37(b)(2)(C) motion, we see no need to discuss the merits of third party Defendant Solofa's Rule 41(b) argument.

counsel to respond properly to discovery orders or to fail to appear at scheduled hearings will be upheld unless abused.").

■ In deciding whether to grant a 37(b)(2)(C) dismissal, a court should not only consider the party's conduct, but also consider the effect that abuse of the discovery process has on "overcrowded dockets and precious few judicial resources." *Ford v. Wash. Metro. Area Transit Auth.*, 131 F.R.D. 12, 14 (D.C. Cir. 1990). Courts should "consider the deterrent effect a sanction will have on parties and potential parties in other cases who might otherwise contemplate abusive actions." *Founding Church of Scientology of Washington D.C., Inc. v. Webster*, 802 F.2d 1448, 1458 (D.C. Cir. 1986). "[I]f the district courts are to avoid exacerbating the already heavy backlog of litigation, the power and willingness to draw the line on dilatory litigants must more than theoretical." *Ames v. Standard Oil Co.*, 108 F.R.D. 299, 302 (D.D.C. 1985) (internal quotations omitted).

■ Furthermore, a court need not consider lesser sanctions before dismissing a case under Rule 37(b)(2)(C). *Halas v. Consumer Servs Inc.*, 16 F.3d 161, 165 (7th Cir. 1994) ("It is axiomatic that the district court need not impose a lesser sanction prior to assessing the sanction of dismissal."); *Founding Church of Scientology of Washington D.C., Inc.*, 802 F.2d at 1459 (stating that a district court may dismiss a case under 37(b)(2)(C) "even where a less drastic sanction may have been entertained") (citation and quotations omitted).

■ In the present case, Makro has acted deliberately and consistently in its failure to comply with Progressive's discovery requests and this court's discovery orders; and, therefore, dismissal under Rule 37(b)(2)(C) is proper.

Makro filed this case in June 1999 and because of their continued failure to get their case organized, the parties are still early in the discovery process, now over five years later.

Makro's first blunder was its near four-year delay in answering Progressive's first set of interrogatories. Makro contends that this delay was caused by one of its earlier attorneys, who would not pass on the client file to a later attorney. This is an understandable excuse for a shorter delay—but after nearly four years, someone in the Makro camp should have been moving the case forward. There are ways to compel an attorney to turn over client files, and it should have taken Makro far less than four years to explore their options. Further, even without the file, Makro should have known that months and years were passing by, and that some action needed to be taken on the case.

Then, when Makro finally got the ball rolling, its counsel promised Progressive it would respond to the interrogatories in thirty days; yet, it took them over three months to do so. And, when they finally did take action, their response was inadequate. Makro simply incorporated by reference the lengthy and convoluted Hunsaker report.

■ Then, after more interrogatories, Makro made no attempt to improve upon their earlier inadequate responses and Progressive filed a motion to compel. On June 14, 2004, this Court held a hearing on that motion and, without explanation, Makro's counsel failed to appear at the hearing. This action alone is grounds for dismissal under Rule 37(b)(2)(C). *See Coarchado*, 665 F.2d at 413.

On July 17, 2004, this Court granted the motion to compel and ordered Makro to comply within thirty (30) days. Makro did not do so and Progressive filed this motion to dismiss. On September 27, 2003, this Court held a hearing on that motion. As of that date, well more than two months had passed and Makro had not lifted a finger in an attempt to comply with this Court's motion to compel. Instead, it continued to assert that the lengthy Hunsaker report was the best they could do. However, this Court had already rejected that position.

In sum, Makro's actions are consistent and blatant enough to be considered a willful disregard of discovery requests and court orders. Makro asserts that it is unable to fully comply with Progressive's interrogatory requests. It contends that it is unable to decode the Hunsaker report and that only an expert could do so. Even if this was true, Makro has offered no explanation as to why this would have caused it to fail to attend the June 14 hearing, fail to respond to the motion to comply and generally fail to do anything with regards to the prosecution of their case. In the words of the *Montgomery* court: "Enough is enough." *Montgomery*, 2004 WL 2091483 at *6. (explaining that 37(b)(2)(C) dismissal was proper after plaintiffs had repeatedly disrespected the system).

This Court also has a responsibility to Progressive to make sure that Makro is diligently prosecuting its case, but this litigation has been hanging over Progressive's head for over five years now. Under the circumstances, we cannot allow Makro's continued inactivity, while further elevating Progressive's litigation angst and costs.

■ This court additionally has a responsibility to other litigants in this jurisdiction competing for limited judicial resources. With growing caseload and docket concerns, the claimant who refuses to take his responsibility to the court and the system seriously must be set aside in favor of the serious litigant.

■ While dismissal may appear harsh because it potentially penalizes the client for the attorney's misdeeds, the Supreme Court has expressly rejected the suggestion that "it would be inappropriate to penalize [the clients] for the omissions of their attorney." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd P'ship*, 507 U.S. 380, 396-97 (1993). Courts have consistently held that clients must "be held accountable for the acts and omissions of their chosen counsel." *U.S. v. Reyes*, 307 F.3d 451, 456 (6th Cir. 2002); *Corchado*, 665 F.2d at 413 ("We realize that we are visiting the sins of the attorneys upon the client, but this is an unavoidable side effect of the adversary system."); *Scratch v. Sua*, 23 A.S.R.2d 20, 22 (Land & Titles Div. 1992) ("Petitioner voluntarily chose this attorney as his representative in this action, and he cannot now avoid the consequences of his freely selected agent.") (citing *Smith v. Ayer*, 101 U.S. 320, 326 (1879)).[3]

## Conclusion

We hold that Makro has willfully failed to comply with this Court's June 14, 2004 Order and further willfully failed to appear at the hearing of June 17, 2004. Therefore, we conclude that dismissal under T.C.R.C.P. 37(b)(2)(C) is warranted.

For reasons given, the motion to dismiss is granted.

It is so ordered.

■■■■■

---

[3] If Plaintiff wants to continue to litigate the issues relevant to the present controversy, it will have to look to counsel and allow Progressive to move beyond this prolonged lawsuit. *See Vivao v. Alepeni*, 28 A.S.R.2d 147, 148 (Trial Div. 1995) ("[r]elief with regard to an inexcusable mistake of an attorney lies against the attorney, not relief from judgment").